# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **MARGARET CARMOUCHE** | * | **CIVIL ACTION NO. 07-1670** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Margaret Carmouche, born January 23, 1951, filed applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") in October, 2001, alleging disability as of January 30, 1999, due to degenerative disc disease of the lumbar spine, hypertension, morbid obesity, and right eye blindness. After the applications were denied through the hearing level, claimant filed a request for review by the Appeals Council.

Pending the Appeal's Council's decision, claimant filed applications for a period of disability, disability insurance benefits and SSI on May 30, 2003. These applications were eventually administratively dismissed.

On February 17, 2006, the Appeals Council granted claimant's request for review. The Appeals Council vacated the decision, and remanded it back to the ALJ. On November 7, 2006, the ALJ issued an unfavorable decision. After exhausting administrative review, claimant appealed to this Court.

<u>FINDINGS AND CONCLUSIONS</u>

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows: **(1) Records from Thibodeaux Regional Medical Center dated June 30, 2002**. Claimant complained of bilateral leg numbness and foot pain. (Tr. 87). Her blood pressure was 140/96, and she weighed 260 pounds. On examination, she had full range of motion without spasm and negative straight leg raising. (Tr. 89). The impression was lumbar radiculitis.

**(2) Consultative Orthopedic Examination by Dr. John P. Sweeney dated December 19, 2002**. Claimant complained of obesity, leg, knee, back and hip

2

pain, and high blood pressure.  (Tr. 91).  She also complained of discomfort in the left wrist.  Her medical history was positive for back pain, anxiety, and depression.

On examination, claimant was 61 inches tall and weighed 246 pounds.  (Tr. 92).  Her blood pressure was 152/100.  Visual acuity was 20/200 in the right eye and 20/50 in the left.

Claimant had full range of motion of her upper extremities.  She had a ganglion on her left wrist, with full range of motion of her wrists.  Her thoracic and lumbar spine exams were normal.

Claimant had full range of motion of the hips and knees.  She also had full range of motion of the ankles and subtalar joints.  Her right foot had a prominence over the dorsum, but the foot exam was otherwise normal.

Claimant's gait was unremarkable, and her station was normal.  She was able to walk without limping.  She had decreased sensation on the lateral side of her right thigh consistent with a meralgia paresthetica.  Her neurological exam was normal.  Her calves' circumferences were unremarkable.

Dr. Sweeney's impressions were metatarsal bossing, possible ganglion, metatarsal/tarsal articulation of the right foot, left wrist ganglion, back pain by history, and meralgia paresthetica.  He noted that claimant presented with complaints which were associated with mild orthopedic findings and not

associated with findings that would restrict activities of gainful employment. He opined that there were no objective findings that would preclude her from working.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Sweeney found that claimant had no restrictions as to lifting/carrying, standing/walking, sitting, pushing and/or pulling. (Tr. 93-94). He determined that she could perform all postural activities frequently. (Tr. 94). She had no environmental limitations. (Tr. 95).

**(3) Records from Leonard Chabert Medical Center dated February 7, 2000 to August 4, 2003**. On February 7, 2000, claimant was admitted for chest pain. (Tr. 254). She reported that she was feeling stressed. She left prior to the physician's evaluation.

On February 20, 2000, claimant complained of chest discomfort. (Tr. 252). Her blood pressure was 134/95. The impression was GERD. She was prescribed Pepcid. (Tr. 253).

Claimant complained of right leg numbness and chest wall discomfort on June 11, 2001. (Tr. 248). The impression was GERD and thigh neuropathy. She was prescribed a bland diet. (Tr. 249).

Claimant failed to show for appointments on several occasions. (Tr. 241, 242, 247).

On June 6, 2002, claimant complained of low back pain with "cold," and bilateral leg swelling. (Tr. 245). The impression was bronchitis.

On May 2, 2003, claimant complained of pain in the right thigh, arm, and back. (Tr. 243). She had decreased sensation and grip strength and a positive Phalen's in her right hand. She had no knee swelling. The impression was right carpal tunnel syndrome and bilateral knee pain. She was prescribed a wrist splint.

### (4) Consultative Examination by Dr. Kenneth A. Ritter, Jr. Dated October 27, 2003. Claimant complained of arthritis, knee and low back pain with too much activity, lateral thigh numbness with standing too long, hypertension, and intermittent right wrist pain. (Tr. 255). She was given a prescription for Vioxx for arthritis, but had never filled it. She had never been treated with medicine for high blood pressure. She wore a wrist splint on occasion.

On examination, claimant's blood pressure was 150/110. (Tr. 256). She was 5 feet 1 ½ inches tall and weighed 270 pounds. Her heart and lungs were normal.

Claimant had a normal gait and station for her weight. Her right wrist was in a splint. She had a negative Tinel's sign in the right wrist, and range of motion

was normal.

Claimant's knees had no redness, heat, or swelling. She had slight ligament elasticity in her knees. She had negative straight leg raises. She was able to get up and down from a chair and the exam table quickly and without difficulty. Her neurological exam was intact with normal DTRs, strength, and sensation.

Dr. Ritter's impression was significant obesity; hypertension with very elevated blood pressure; very rare medical visits, and some degree of degenerative joint disease probably secondary to obesity. (Tr. 257).

In the Medical Assessment of Ability to Do Work-Related Activities (Physical), Dr. Ritter determined that claimant could lift/carry 25 to 35 pounds occasionally and 10 to 25 pounds frequently. (Tr. 258). She could stand/walk for four to six hours, and two to three without interruption. Sitting was not affected by her impairment. She could rarely climb, crouch, or crawl, occasionally stoop and kneel, and frequently balance.

**(5) Records from Teche Action Clinic and Leonard Chabert Medical Center dated July 17, 2003 to May 8, 2006**. On July 17, 2003, claimant presented with a history of arthritis and obesity. (Tr. 267). She also had a history of hypertension; however, she had not been taking her medications. The impression was obesity, DJD, and hypertension.

On January 22, 2004, claimant presented with elevated blood pressure and generalized joint aches, especially the right upper extremity. (Tr. 266). She had missed her previous appointment. She had crepitus on palpation of the right wrist. Her neurological examination showed no deficits. The impression was hyperlipidemia, DJD, obesity, hypertension, and poor compliance. She was prescribed Lipitor, Dyazide, and Bextra.

On April 20, 2004, claimant complained of depression and back pain, which had not responded to Bextra. (Tr. 269). She had no edema of the extremities. The assessment was obesity, anxiety, depression, and back pain. She was prescribed Tylenol with codeine and Lexapro.

On November 2, 2005, claimant was given a stress test for chest pain. (Tr. 292). Claimant reached 87% of the maximum predicted, and a maximum blood pressure of 140/92. (Tr. 283). The conclusion was a negative Dobutamine stress echo for new ischemia. (Tr. 292).

On November 15, 2005, claimant complained of numbness in her thighs bilaterally. (Tr. 282). She deserted the hospital.

On January 3, 2006, claimant was seen for musculoskeletal back pain. (Tr. 279, 290). She was prescribed Flexeril and Relafen.

On January 30, 2006, claimant was seen for depression. (Tr. 261). She stated that she could not afford Lexapro. She was prescribed additional medication for hypertension and advised to keep a log.

On May 8, 2006, claimant complained of difficulty swallowing, low back pain, and depression. (Tr. 274). Her medications included Nexium, Tylenol 3, and Zoloft. (Tr. 273). The impression was dysphagia and low back pain.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on October 18, 2006, claimant was 55 years old. (Tr. 331). She testified that she was 5 feet three inches tall, and weighed 264 pounds. She stated that she had gained and lost weight over the last several years. She had worked as a child care worker and a welder's helper. (Tr. 336).

As to complaints, claimant stated that she had sharp pains in her low back and knees, and numbness in her thighs. (Tr. 332). She complained that she had a hard time getting out of the bathtub. She reported that her thighs became numb after she stood for about 45 minutes. Afterwards, she had to sit for about an hour and a half. She testified that the longest she had stood on her feet in one day was about an hour. (Tr. 333).

Claimant also complained of depression, for which she was taking Zoloft. Additionally, she reported having high blood pressure. She stated that she became

dizzy every other day, even with medication.  (Tr. 334).

Claimant testified that she had poor vision in one eye.  (Tr. 334).  She stated that she did not wear glasses, because she did not have the money to get them. (Tr. 335).  She testified that she could not stand and walk for as much as four hours a day because of constant pain.

### (7) Administrative Hearing Testimony of Cindy Harris, Vocational Expert ("VE").  The ALJ asked Ms. Harris to assume a claimant who had alleged disability at age 48, and was currently age 55; had an 11th-grade education and the same work history; was restricted to lifting and carrying 50 pounds occasionally and 25 pounds frequently; could not drive; could not do work requiring binocular vision; was limited from balancing and climbing ladders, ropes or scaffolds, and working at unprotected heights or around dangerous moving machinery; could stand, walk, and sit for six out of eight hours; was capable of understanding, remembering, and carrying out detailed, but not highly complex-type decisions; could attend and concentrate for extended periods, and could deal appropriately with workplace peers, bosses, and occasional routine work changes.  (Tr. 338-39). In response, the VE testified that she could perform her past work as a child care worker and restaurant cook, but not the welder's helper.  (Tr. 340).  When the ALJ changed the hypothetical to limit claimant to light work, Ms. Harris stated that

claimant could still perform those jobs.  However, when the ALJ asked whether

claimant could do those jobs if she could only be on her feet for a couple of hours

a day, or missed a couple of days of work a month on a repetitive basis, the VE

reported that those jobs would be precluded.  (Tr. 341-42).

**(8) The ALJ's Findings**.  Claimant argues that: (1) the ALJ erred in

attributing an excessive capability for substantial gainful activity to her; (2) the

ALJ's determination that claimant could perform her past relevant work was not

supported by substantial evidence, and (3) the ALJ erred in failing to perform a

proper evaluation of the effect of her obesity on her capacity for sustained work

activity.

First, claimant asserts that the ALJ erred in finding that she retained the

capacity for light work.  In support of this argument, she cites her testimony that

she could only stand about 45 minutes or one hour at the most, as well as Dr.

Ritter's statement that "I am sure that she has some degree of degenerative joint

disease present secondary to her obesity."  (Tr. 257, 332-33).  However, claimant

fails to cite Dr. Ritter's Medical Source Statement, in which he found that claimant

could lift/carry 25 to 35 pounds occasionally and 10 to 25 pounds frequently;

stand/walk for four to six hours, and two to three without interruption; had no

limitations as to sitting; could rarely climb, crouch, or crawl, occasionally stoop and kneel, and frequently balance. (Tr. 258).

Additionally, the consultative orthopedist, Dr. Sweeney, found that claimant presented with subjective complaints which were associated with mild orthopedic findings, and not associated with findings that would restrict activities of gainful employment. (Tr. 92). He further opined that there were no objective findings that would preclude her from working. In the Medical Source Statement of Ability to do Work-Related Activities, Dr. Sweeney found that claimant had no restrictions as to lifting/carrying, standing/walking, sitting, pushing and/or pulling, could perform all postural activities frequently, and had no environmental limitations. (Tr. 95). In short, the record is absolutely devoid of any medical evidence which supported claimant's hearing testimony that the longest she had stood in one day was about one hour, and that she was unable toto stand and walk for as much as four hours a day. The medical testimony is completely to the contrary and provides substantial support for the Commissioner's finding of non-disability.

Further, Dr. Ritter noted that claimant made very rare medical visits. (Tr. 257). Although claimant explained her pattern of sporadic medical treatment on her inability to afford it, the record is replete with evidence that claimant

repeatedly missed doctors' appointments and failed to comply with medical treatment. (Tr. 241, 242, 247, 254, 255, 266, 267, 282). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of non-disability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). Further, it is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan,* 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, the ALJ's finding is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Next , claimant asserts that the ALJ erred in failing to consider the functional limitations resulting from her obesity in accordance with SSR 02-1p.

The prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings provide guidance about the potential effects obesity has in causing

or contributing to impairments in those body systems. SSR 02-01p. Section 1.00Q, which was added to the musculoskeletal listing, states that obesity is considered to be a medically determinable impairment, and reminds adjudicators to consider its effects when evaluating disability. *Id*.; 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.00Q. This provision also reminds adjudicators that the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. *Id*. Therefore, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must* consider any additional and cumulative effects of obesity." (emphasis added). *Id*.

Here, the record reflects that the ALJ specifically considered the affect of claimant's obesity on her RFC. (Tr. 21). He noted that although she was morbidly obese at 62 inches tall and 270 pounds, she maintained full range of motion throughout her spine and extremities, had no evidence of arthritis in her knees, and had unimpaired gait and station. These findings are based on, and supported by, the reports of Dr. Sweeney and Dr. Ritter. (Tr. 92, 256). Accordingly, this argument lacks merit.

13

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED***

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 23, 2009, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE